The opinion of the Court was afterwards delivered by
Parsons, C. J.
This is an action of covenant broken, brought upon a policy of insurance which was issued under the seal of the company, and it comes before the Court on a case stated by the parties.
It appears from the case that, after the company were incorporated, and had established their rules and articles, the plaintiff, in March, 1799, caused his house in Boston to be insured by them for the term of seven years, and paid the premium and deposit agreed upon. Afterwards, in May, 1800, he sold his house, and took back a mortgage of it. In October, 1800, he assigned the mortgage, which was discharged in January, 1802. In April following, he offered to surrender his policy to the company, and also demanded the repayment of his deposit, which the Court must, from the case, consider as not having been then appropriated by the defendants. They refused to accept the surrender, or to repay the deposit.
If the plaintiff can recover, his right must be dented from the *297 act of incorporation of the company, and from their articles, both of which make a part of the case. He relies on the 18th article, in which it is agreed that, when any building insured shall be alienated by sale, the insured may surrender the policy, and receive a sum not exceeding his deposit money. An offer to surrender, and a refusal to accept it, having the same effect in this cause as an actual surrender, the facts agreed in the case bring the plaintiff prima facie within that article, and he must recover, unless some of the objections made on the part of the defendant should prevail.
The first objection is, that the 18th article does not give the assured an option to surrender on alienation, without the assent * of the company, who may withhold their assent, [ * 326 ] or grant it on such terms as may be agreed by the parties, so that a sum exceeding the deposit shall not be repaid. This objection they rest on a principle of the common law, that contracts cannot be dissolved but by the mutual consent of the parties; and also on the indefinite description of the sum to be repaid on surrender. The principle is correct", when the contract does not secure to one of the parties a right to dissolve it without a mutual consent; and from the nature of this contract, there may exist rules for ascertaining the sum to be repaid on surrender, independent of the will of either party.
We must therefore look into the incorporating act, and the articles, to determine the intent of the contracting parties. By the act, any person insuring his building, situate within the commonwealth, becomes, ipso facto, a member of the company. On his insurance he must advance the requisite premium and deposit money ; and the sums so advanced are to be appropriated to defray the expenses of the company; to pay the losses that may happen during the existence of his policy; and to raise a reserved fund of 10,000 dollars. If, from the extent of the losses, the fund should be inadequate to the payment, he may be assessed, to supply the deficiency, in a sum- not exceeding twice the amount of premium and deposit he has advanced; and at the expiration of his policy he will be entitled to receive his proportion of the fund remaining. When we look into the articles, there appear to be several that relate to this action. The 12th limits the company to the making of any insurances but for the term of seven years, on the last day of which the policy is to expire. The 11th defines the absolute fund more particularly. The 17th directs the appropriation to the payment of losses, for raising the reserved fund, and for refund ing to the insured such part of his deposit as may remain not so ippropriated at the expiration of his policy. The articles are silent *298 as to his share of forfeits, premiums, interest, and profits, which constitute part of the absolute fund, while the act gives him his share in all the funds remaining at that time. From a view of these articles, as connected with the act of incorpora- [ * 327 ] tian, * it appears that the insured must continue a member of the company for seven years, subject to all the burdens to which a member is liable, and at the expiration of that time he will be entitled to receive his proportion of the re maining fund, if any ; and no alienation of his property, although by it the company are discharged from all risk, could dissolve his connection. A provision of this nature and extent, it is to be presumed, would have prevented insurances by those whose sole object was indemnity; and this effect would have been inconvenient to the corporation. The 18th article is designed to prevent this inconvenience, by authorizing the insured to surrender his policy upon alienation. If this authority could not be exercised but with the consent of the company, this object of the article would be defeated; also, the introduction of the article would be nugatory, for without the article the parties might at any time have annulled the policy by mutual consent. We are therefore satisfied, that the construction of this article must be according to the natural import of the words ; and the right to surrender the policy by the insured, on alienation, may be exercised by him at his election. Nor does the uncertainty in describing the part of the deposit to be refunded on surrender, militate with this construction. Until the offer by the insured to surrender, his deposit is subject to the appropriation of the company for the payment of all losses that have happened before that time, and for the other purposes mentioned in the act and articles. He is therefore to receive so much of his deposit as remains not liable to the legal appropriation by the company. If no part is thus liable, he will receive the whole; if the whole is thus liable, he will receive nothing.
Another objection is, that the alienation was made in May, 1800, and the plaintiff did not offer to surrender until more than a year after the alienation. To support this objection, the defendants rely on the 19th article, which provides that all deposit money not demanded within one year from the expiration of the policy shall be deemed forfeited, and become the property of the society. The validity of this objection must depend on the construction given to the expression, “ from, the expiration of the policyIf [ * 328 ] it means from the expiration of the time *for which the policy was effected, the objection is without weight. But if it is to be extended to cases where the risk is terminated by alienation, the objection will prevail, unless the taking back the: *299 mortgage was a continuance of the risk. Whether the risk was thus continued, it is not necessary to give an opinion, as we are satisfied the former is the true construction The phrase is used in the act of incorporation, where it must necessarily mean the expiration of the policy by the efflux of time; for the termination of the risk in any other way is not there contemplated. The corporation, in the 12th article, speak of the policy as expiring at the end of the time for which it was effected. The expression is also used in the 17th article, where it must have the construction we give it, or the 18th article is rendered superfluous. The 17th article secures to the insured the return of so much of his deposit as is not applied at the expiration of his policy ; but if the policy expire by alienation, it is a case within the 17th article ; for the surrender of an expired policy is a preposterous and futile act. Indeed, were we to admit the construction insisted on by the defendants’ counsel, it would be less beneficial to the corporation. Then every alienation of a. building insured would not only dissolve the contract of insurance, but would discharge the insured from his liability to assessments for losses happening before the surrender, and by the express words of the act of incorporation he would be entitled to his share of the remaining funds.
The last objection admits the right of the insured to surrender at his election, but the defendants insist that he should make his election in a reasonable time, which they say was not done in the present case. And they compare it to the obligation to abandon on a constructive total loss in a marine insurance.
This objection, when made, seemed to deserve attention ; but on consideration we think it oughjt not to prevail. There is no reasonable analogy between the two cases. Abandonment, in a marine policy, is supposed to vest a beneficial interest in the insurers. A surrender in this case is merely a discharge of a contract. A delay to abandon may materially injure the underwriters; but a delay to surrender must be for the benefit of * the [ * 329 ] company, as they have the use of the deposit, and hold the insured liable for assessments for losses which may happen before the surrender.
But it is supposed that the insured, after alienation, may, in contemplation of a future loss, offer to surrender. This supposition is very natural, for we know no motive to induce him to surrender at any time, but to guard against the consequences of future losses. For this purpose was the right to surrender at his election vested in him ; and he gives the company what they consider as an equivaent for the exercise of it, by extinguishing his claim to any share *300 of the funds remaining at the expiration of the time for which his policy was effected.
Judgment must be for the plaintiff, according to the agreement of the parties in the case.